A. N. DERINGER, INC. *v.* UNITED STATES (No. 4794)[1]

[1] C. A. D. 565

United States Court of Customs and Patent Appeals, May 27, 1954

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for appellant.

*Warren E. Burger,* Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster,* special attorneys, of counsel), for the United States.

[Oral argument April 7, 1954, by Mr. Schwartz and Mr. Auster]

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This appeal involves a petition for remission of additional duties levied pursuant to section 489 of the Tariff Act of 1930, which was denied by judgment of the United States Customs Court, First Division, pursuant to its decision, Abstract 57452.

Section 489, so far as pertinent, reads as follows:

Sec. 489.  Additional Duties:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. * * *  Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided,

except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

Appellant, A. N. Deringer, Inc., petitioner below, is a customhouse broker. The merchandise, consisting of nylon yarn on spools and bobbins, was exported by Colwool Accessories, Ltd., of Montreal, Canada, consigned to J. & W. Knit Fabrics of Long Island City, New York, and was entered at the port of Champlain, New York. The yarn was entered at $2.25 per pound but the spools and bobbins were not entered. Subsequently, the nylon was appraised at $4.50 per pound, 20 cents each for 3300 spools, 60 cents each for 378 aluminum bobbins, and 45 cents each for 781 bobbins made of other material.

Petitioner offered one exhibit in evidence and presented the testimony of one A. E. Gage who had been employed by petitioner for approximately six years.

It appears that the merchandise arrived at the port of entry by truck early in the evening of May 9, 1951. The carrier, a trucking firm, assigned the papers to appellant for the purpose of making entry. Appellant had no prior knowledge of the shipment and had received no instructions from either the shipper or consignee. Entry was made at the value stated in the consular invoice. At the time of entry appellant executed a "submission sheet" directed to the appraiser requesting information concerning the value of the merchandise. Two days later the sheet was returned advising that the appraiser had no information concerning value thereof.

Between the date of entry on May 11, 1951, and the date of appraisal, August 29, 1951, the witness testified that he had two interviews with the appraiser, viz, May 24 and August 8, concerning the entry. He stated that the purpose of those conversations was to determine whether "there was further information or anything that we could do with this particular shipment and at that time I made a notation that the case was still pending, assuming that it was still pending before the CIE in New York."

Pertinent to the above is the following testimony of the witness:

DIRECT EXAMINATION

By Mr. Schwartz:

Q. On either of those dates or at any time before the appraisement, did the appraiser indicate to you that the entered value was not correct? A.—

\* \* \* \* \* \* \*

A. No.

Chief Judge OLIVER: Did he at any time indicate to you that your entered value was correct?

Witness: No, he never did.

The witness at this point testified that a few days before the appraisement, a letter arrived from the collector's office at Ogdensburg, New York, demanding liquidation damages under section 592 of the Tariff Act of 1930.

\*     \*     \*     \*     \*     \*     \*

Q. Did you make any attempt to amend the entry at that time? A. No.

\*     \*     \*     \*     \*     \*     \*

Chief Judge OLIVER: Did you have time at that time to amend your entry; had it been liquidated as yet?

Witness: No.

Chief Judge OLIVER: You could have amended your entry had you wished to do so?

Witness: We still assumed that our entered value was correct. We assumed that the invoice covering the shipment had passed before the appraiser for the purpose of appraisement.

Chief Judge OLIVER: Did you check to see whether it actually had come before him or whether you were barred from amending your entry, did you make any check?

Witness: I don't know.

Chief Judge OLIVER: Did you make any attempt to amend?

Witness: No.

\*     \*     \*     \*     \*     \*     \*

Chief Judge OLIVER: \* \* \* before this notice was received you didn't know the value was incorrect.

Witness: That's right.

\*     \*     \*     \*     \*     \*     \*

Chief Judge OLIVER: Did you consult with the importer at any time to check on the question of value or to verify the value which you assumed was correct from the consular invoice?

Witness: No.

From the record it appears that about all appellant's employee did to ascertain the correct dutiable value of the merchandise was to file the submission sheet requesting information and wait for the appraiser's action thereon. However, the effect of such procedure was stated in *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392, that

\* \* \* it is no part of the official duty of such officer to supply the desired information, \* \* \*

Moreover, where a submission sheet has been returned with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306.

While it is true that the witness testified he had no intention to defraud the revenue of the United States, such statement *per se* does not measure up to the "satisfactory evidence" required by the statute.

*United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507.

We have examined the arguments advanced by appellant that it acted in such a reasonable and prudent fashion as to require reversal of the judgment of the Customs Court. It must be remembered, however, that the burden of proof is on the importer and there is nothing in the record to support that position.

In the case of *H. Galland & Co.* v. *United States*, 17 C. C. P. A. (Customs) 51, T. D. 43337, it was stated:

* * * Nor are we impressed with the argument that appellant is entitled to great consideration because the appraiser did not know the correct values of the merchandise. Had the appraiser accepted the statements contained in the invoices and entries, he would have been deceived, and, as a consequence, the customs revenue would have been defrauded. * * *

Appellant concludes his argument by pointing out that no owner's declaration was filed under section 485 (d) of the Tariff Act of 1930. Had that action been taken, appellant would have been relieved of his liability for additional duties. However, no valid reason is advanced to show that any effort along that line was made. In the case of *Stan Newcomb and Barbara Todd* v. *United States*, 37 C. C. P. A. (Customs) 18, C. A. D. 413, it was observed

* * * If it be conceded that the result of this action is harsh as to him, it must be realized that the statute itself seems harsh. The courts, however, cannot strike down statutes simply because of harshness resulting from their operation, and it must be borne in mind that it is vital to the public that the revenues of the Government be safeguarded, even if it requires a harsh statute to accomplish it.

In that connection appellant urges that the Customs Simplification Act of 1953 sought to eliminate such hardships. If that be correct, it appears that Congress did not intend to provide such relief prior to disposition of pending matters.[1]

The Customs Court observed that the petitioner's disposition was a passive one and that the witness relied completely on the customs personnel to do that which the law required him to do. We have found nothing in the record which conflicts with that view. There was a duty upon appellant to enter the merchandise at the proper value and that duty was not discharged. *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487.

The judgment appealed from is *affirmed*.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.

---

[1] SEC. 23. Except as may be otherwise provided for in this Act, the repeal of existing law or modifications thereof embraced in this Act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil or similar case prior to such repeal or modification, but all liabilities under such laws shall continue, except as otherwise specifically provided in this Act, and may be enforced in the same manner as if such repeal or modification had not been made. [Public Law 243, 67 Stat. 507.]